IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


WILLIE M. PATTERSON,
   Petitioner,

vs.            Case No.: 3:05cv300/LAC/EMT

JAMES R. McDONOUGH,
   Respondent.
_____/

## REPORT AND RECOMMENDATION

   This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Doc. 5).  Petitioner filed a reply (Doc. 8).

   The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.   BACKGROUND AND PROCEDURAL HISTORY

   The procedural background of this case is undisputed by the parties and established by the state court record.  Petitioner was charged by information with sexual battery with deadly weapon or force likely to cause serious personal injury (Doc. 5, Ex. F at 131).  Pursuant to a plea agreement, Petitioner pled nolo contendere to the lesser offense of aggravated battery and received a prison sentence of fifteen years (*id.*, Ex. F at 45–49, 138, 192–97, 224).  This sentence also included a concurrent five-year sentence for an unrelated grand theft charge (*id.*, Ex. F at 192–97, 212–13,

224).  Petitioner's sentence was imposed on October 23, 2002 (*id.*, Ex. F at 197).  Petitioner did not

appeal within thirty days, but he filed a belated appeal on January 20, 2003, which he sought to

amend on February 19, 2003 (*see id.*, Exs. B, C).  Then, on September 30, 2003, Petitioner moved

to voluntarily dismiss his appeal in order to pursue post-conviction relief in the trial court (*id.*, Ex.

D).  On October 10, 2003, the First District Court of Appeal of Florida ("First DCA") granted

Petitioner's motion to voluntarily dismiss his belated appeal (*id.*, Ex. E).

        On or about October 23, 2003, Petitioner filed a motion for post-conviction relief pursuant

to Florida Rule of Criminal Procedure 3.850 (*id.*, Ex. F at 1–25).  After a hearing on the motion, the

trial court denied the motion on November 4, 2004 (*id.*, Ex. F at 124–26).  Petitioner appealed the

decision to the First DCA (*id.*, Ex. F at 127), and the appellate court affirmed the decision per

curiam without written opinion on July 22, 2005, with the mandate issuing August 9, 2005 (*id.*, Exs.

J, K).  Patterson v. State, 907 So. 2d 521 (Fla. 1st DCA 2005) (Table).

        Petitioner filed the instant habeas action on August 1, 2005 (Doc. 1 at 6).  Respondent

concedes that the petition is timely (Doc. 5 at 4).

II.     STANDARD OF REVIEW

        Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ

of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on

the ground that he is in custody in violation of the Constitution or laws of the United States."  As

the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for

federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism

and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214,

1218–19.

        Section 2254 now provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody
        pursuant to the judgment of a State court shall not be granted with respect to
        any claim that was adjudicated on the merits in State court proceedings unless
        the adjudication of the claim–

        (1)     resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
            determined by the Supreme Court of the United States; or

        (2)     resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the

State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in

Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1]  The appropriate test

in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may
> issue only if one of the following two conditions is satisfied—the state court
> adjudication resulted in a decision that (1) "was contrary to . . . clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."  Under the "contrary to"
> clause, a federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this court on a question of law or if the state
> court decides a case differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the correct governing
> legal principle from this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

Id., 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed.

2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any

issue raised in a federal habeas petition upon which there has been an adjudication on the merits in

a formal state court proceeding.  See Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002);

Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002).  First, the court must ascertain the

controlling legal principles that are clearly established by the Supreme Court at the time of the state

court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court

must determine whether the state court adjudication was contrary to the clearly established Supreme

Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause

---

[1]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the
Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529
U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices
Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at
1518–23).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06).  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority."  Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Id. (citing and quoting Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).  A state court's incorrect application of clearly

established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); see also Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. See Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

III.    EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas

---

[2]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
            (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." *Id.* (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  *Id.* at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364 (1995).  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Id.* at 365–66.  Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The <u>Baldwin</u> Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in

---

[3]The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*  With regard to this statement, the Eleventh Circuit stated in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"<u>McNair</u> [v. Campbell], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[4]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 2555 & n.1, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* <u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993); <u>Parker v. Dugger</u>, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's

---

[4]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id.* A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5] *Id.* Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

A petitioner can overcome a procedural default in two narrow circumstances. The petitioner must either show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Henderson v. Haley, 353 F.3d 880, 892 (11th Cir. 2003); Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. Furthermore, the Eleventh Circuit has held that because there is no constitutional right to an attorney in state post-conviction proceedings, any ineffectiveness of post-conviction counsel cannot be "considered cause for the purposes of excusing

---

[5]The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1301–02 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

. . . procedural default that occur[s] . . . at the state collateral post-conviction level." Henderson, 353 F.3d 892 (citing 28. U.S.C. § 2254(i); Coleman v. Thompson, 501 U.S. 722, 752 (1991); In re Magwood, 113 F.3d 1544, 1551 (11th Cir. 1997); Johnson v. Singletary, 938 F.2d 1166, 1174–75 (11th Cir. 1991)).  To establish prejudice, a petitioner must show that there is "at least a reasonable probability that the result of the proceeding would have been different."  *Id.*

Alternatively, to satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further,

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    Ground One: Trial Counsel Rendered Ineffective Assistance by Advising Petitioner That He Would Only Receive a Five-year Sentence Pursuant to Petitioner's Plea Agreement with the State

(*see* Doc. 1 at 7) (rephrased by the court).[6]

1.    Ineffective Assistance of Trial Counsel

---

[6]Petitioner entitled Ground One: "The Trial Court Erred by Not Allowing Petitioner to Withdraw His Plea That Was Involuntarily Rendered in Violation of His Constitutional Rights" (Doc. 1 at 7).  Petitioner's title describing Ground One is misleading.  Given this heading, Petitioner  appears to seek relief on the ground that the lower court erred by not allowing Petitioner to withdraw his plea (*id.*).  In the body of the instant petition, however, Petitioner alleges that defense counsel was ineffective because he advised Petitioner that he would receive a five-year sentence in connection with his plea agreement (*see id.*).  In addition, Petitioner's reply to Respondent's answer clearly states that as "his first claim, [P]etitioner asserted he was denied his Sixth Amendment right to the effective assistance of counsel based on the affirmative misinformation of counsel" (Doc. 8 at 2).  Thus, the court will address Petitioner's ineffective assistance of counsel claim in Section IV(A)(1).  To the extent that Petitioner appears to allege that the trial court erred by failing to permit Petitioner to withdraw his plea, in an abundance of caution, the court will address this claim of trial court error in Section IV(A)(2).

Petitioner claims that his trial counsel never informed him that Florida's sentencing guidelines had been replaced by the criminal punishment code (*id.* at 7).  Petitioner further alleges that he understood his plea agreement to be a "'straight-up plea' to the court for a guideline sentence" of five years, not a plea open to the court for a sentence in the guideline range between 51.9 months and the statutory maximum of fifteen years (*id.* at 8).  Petitioner additionally contends that trial counsel's failure to explain the statutory maximum to him rendered the plea involuntary and demonstrates counsel's ineffective assistance (*id.*).  Finally, Petitioner alleges that if he had been properly informed of the potential for a fifteen-year sentence, he would have exercised his right to a jury trial and could have presented a viable defense (*id.*).

Respondent explicitly states that Petitioner exhausted this claim by presenting it in his Rule 3.850 motion (*see* Doc. 5 at 5, Ex. F at 5–13).

> i.       Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  It is the petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable and that he suffered prejudice as a result thereof.  *Id.* at 687.  If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

In determining whether counsel's performance was reasonable, the Court instructed:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  *Cf.* Engle v. Isaac, 456 U.S. 107, 133–34, 102 S. Ct. 1558, 1574–75, 71 L. Ed. 2d 783 (1982).  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action "might be considered sound trial strategy."  *See* <u>Michel v. Louisiana</u>, *supra*, 350 U.S. at 101, 76 S. Ct. at 164.

<u>Strickland</u>, 466 U.S. at 689.

As to the prejudice prong of the <u>Strickland</u>, the Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  <u>Strickland</u>, 466 U.S. at 693.  However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome.  <u>Strickland</u>, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.  Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.  Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695–96.

An ineffective assistance of counsel claim may be used to attack the entry of a plea on grounds that the plea was not voluntarily and intelligently made because counsel did not provide Petitioner with "reasonably competent advice."  Cuyler v. Sullivan, 446  U.S. 335, 344, 100 S. Ct. 1708, 1716, 64 L. Ed. 2d 333 (1980) (quoting McMann v. Richardson, 397 U.S. 759, 770, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970)).  In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56–57, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting McMann, 397 U.S. at 771, 90 S. Ct. at 1449)).  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."  Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of the Strickland standard in a plea situation, Petitioner must prove that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  Hill, 474 U.S. at 59, 106 S. Ct. 370.  Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different.  Id. at 59–60, 106 S. Ct. at 370–71.  While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must come forth with objective evidence to show that but for counsel's errors he would not have accepted the plea offer, and would have insisted on going to trial.  See Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991).  Conclusory, after-the-fact statements that Petitioner would not have pled guilty do not meet this requirement, nor is it sufficient to say that Petitioner would have received a less harsh sentence had he not accepted the plea offer.  See Diaz, 930 F.2d at 835; see also Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

            ii.      Federal Review of State Court Decision

In his Rule 3.850 motion, Petitioner claimed that trial counsel's assistance was ineffective because counsel advised Petitioner that he would receive only a five-year sentence pursuant to his plea agreement; that counsel never informed him that the guideline sentence of 51.9 months represented the low end of the possible sentencing range and that the sentencing court could sentence Petitioner to any term up to and including the statutory maximum; and that counsel informed him "when he entered his plea, that he would receive a five-year sentence under the sentencing guidelines" (Doc. 5, Ex. F at 5–13).  Additionally, Petitioner stated he would not have entered his no contest plea if he had been informed that the State intended to recommend that Petitioner receive the statutory maximum of fifteen years (*id.*).

In its written decision denying Petitioner's claim, the state court did not explicitly cite <u>Strickland</u>; however, neither the reasoning nor the result of the state court decision contradicts it.  Thus, Petitioner has failed to satisfy the "contrary to" clause of section 2254.  *See* <u>Early v. Packer</u>, 537 U.S. at 8.  Therefore, only remaining question is whether the state court decision was objectively unreasonable.

The state court found as fact that trial counsel properly advised Petitioner of the potential statutory maximum sentence that could be imposed by the sentencing court under the plea agreement and that there was no plea agreement as to the sentence (*see id.*, Ex. F at 124–25).  The Rule 3.850 hearing transcript supports the trial court's conclusion and reflects Petitioner's counsel's testimony that he never told Petitioner there was an agreement for a five-year sentence and that no such agreement ever existed (*see id.*, Ex. F at 98, 101, 104).  Additionally, Petitioner's signed plea agreement reflects that there was no agreement as to the sentence Petitioner would receive (*see id.*, Ex. F at 45).

The state court also found as fact that Petitioner was originally charged with sexual battery with a deadly weapon or force likely to cause serious personal injury, which is a crime that carries a maximum potential sentence of life in prison (*id.*, Ex. F at 125).  Both the original information and the Rule 3.850 hearing transcript support this finding (*see id.*, Ex. F at 97, 131).  Additionally, Petitioner's trial counsel testified that Petitioner "was facing an amended information, a two-count information; count one being the sexual battery, count two being aggravated battery with serious

bodily injury.  He was offered a plea agreement that if he pled to the aggravated battery, that the State would not go forward with the sexual battery" charge (*id.*, Ex. F at 97).

The state court further found that the plea to aggravated battery was the result of plea negotiations with the State; however, there was no agreement as to the sentence Petitioner would receive (*id.*, Ex. F at 125).  Again, the 3.850 hearing transcript supports this finding:

> Q.     . . . At any point in your conversations with [Petitioner], did you [(defense counsel)] every represent to [Petitioner] that there was an agreement for five years?
> A.     No.
> Q.     Was there ever any agreement for five years concerning these charges?
> A.     No.

(*id.*, Ex. F at 98).  The record also reflects that Petitioner signed a "Plea and Sentencing Agreement" (*id.*, Ex. F at 45–49).  The plea agreement reflects that Petitioner agreed to plead nolo contendere to one count of aggravated battery carrying a potential maximum sentence of fifteen years (*id.*, Ex. F at 45).  The terms of the written plea agreement provided: "State to recommend sentence within guidelines.  Defendant to present evidence at sentencing hearing." (*id.*).  The state court found that Petitioner was advised that his sentence could be anywhere up the statutory maximum (*id.*, Ex. F at 125).  Petitioner's signed plea agreement supports this finding (*id.*, Ex. F at 45), as well as the Rule 3.850 hearing transcript, which indicates that Petitioner's counsel "specifically told him that [his sentence] could be anywhere up to twenty years" (*id.*, Ex. F at 101).  This twenty-year sentence could result from consecutive sentences on the aggravated battery and the grand theft charges.[7]  In addition, a transcript of the aggravated battery plea hearing reflects that the State agreed to "to recommend a guideline sentence" (*id.*, Ex. F at 210).  This is consistent with trial counsel's testimony that there was no agreement as to the sentence Petitioner was to receive (*id.*, Ex. F at 101).  For example, defense counsel testified:

---

[7]Under § 812.014(2)(c)(1), Florida Statues (2000), grand theft of $300 or more, but less than $5,000 is a felony of the third degree punishable under § 775.082(3)(d), Florida Statutes, by up to five years in prison.  Under § 784.045(1)(a), Florida Statutes, aggravated battery with great bodily harm is a felony of the second degree punishable under § 775.082(3)(c), Florida Statutes, by up to fifteen years in prison.  As defense counsel correctly stated, a consecutive sentence of fifteen years for aggravated battery and five years for grand theft would total twenty years (*see* Doc. 5, Ex. F at 101).  *See also* § 921.16(1), Florida Statutes  ("A defendant convicted of two or more offenses charged in the same indictment, information, or affidavit or in consolidated indictments, informations, or affidavits shall serve the sentences of imprisonment concurrently unless the court directs that two or more of the sentences be served consecutively.  Sentences of imprisonment for offenses not charged in the same indictment, information, or affidavit shall be served consecutively unless the court directs that two or more of the sentences be served concurrently.").

Q.    Did you tell [Petitioner] that it would be it would be up to the sentencing court as far as what the specific sentence would be?

A.    That's correct.  That's the reason it was set for sentencing. . . .

Q.    . . . [W]as there ever any time that you told [Petitioner] that he could only get five years concerning this charge?

A.    No, sir.

Q.    Isn't it true that you specifically told him that it could be anywhere up to twenty years?

A.    It could be up to twenty years.

Q.    Because that's what the sentencing guidelines called for?

A.    That's right.

(*id.*, Ex. F at 101–02).  At his plea hearing, Petitioner also stated on the record that he discussed the plea fully with defense counsel, that he understood his plea, that he had no questions about it, and that he was satisfied with defense counsel's representation (*id.*, Ex. F at 211–12).

After making the foregoing factual findings concerning the performance of Petitioner's trial counsel, the Rule 3.850 court denied Petitioner's motion for post-conviction relief (*id.*, Ex. F at 125).  The state court's factual determinations are presumed correct unless Petitioner rebuts the finding with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to present clear and convincing evidence to rebut the state court's factual determinations.  Furthermore, the state court's findings are amply supported by the record.  Because the state court reasonably determined that Petitioner's ineffective assistance claim was factually unsupported, the denial of his claim was not an unreasonable application of Strickland.

2.    Trial Court's Failure to Permit Petitioner to Withdraw His Plea

As explained in footnote 6, *supra*, Petitioner also appears to allege that the trial court erred by failing to permit Petitioner to withdraw his plea (*see* Doc. 1 at 7).  Specifically, Petitioner alleges that he filed a motion to withdraw his plea, but the trial court never ruled on it (Doc. 5, Ex. C at 13–14, 25–26).  In its denial of Petitioner's claim the Rule 3.850 court found that this claim should have been raised on direct appeal (*id.*, Ex. F at 125).  Because it was not, the Rule 3.850 court found it barred from consideration in Petitioner's Rule 3.850 motion (*id.*).

Respondent acknowledged Petitioner's claim of trial court error but addressed Ground One as if it were raising only an ineffective assistance of counsel issue (*see* Doc. 5 at 7 ("Petitioner seeks habeas relief on the grounds that the lower court reversibly erred by not allowing Petitioner to

withdraw his plea."; *id.* at 7–11 (concluding Petitioner failed to show trial counsel's performance was deficient and failed to show prejudiced)). Still, Respondent generally contends that Petitioner is not entitled to relief on the grounds raised in Ground One, and Respondent did not expressly waive the exhaustion requirement regarding this claim (*see id.* at 7–11).

To fully exhaust, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845 (citing 28 U.S.C. § 2254(c)). Florida law requires either an appeal of each issue, or where a motion for post-conviction relief is appropriate, the filing of such a motion and an appeal therefrom. Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979). Failure to exhaust is proper grounds for dismissal of a federal habeas petition. Keeney v. Tamayo-Reyes, 504 U.S. 1, 10, 112 S. Ct. 1715, 1720, 118 L. Ed. 2d 318 (1992). As summarized in Bailey v. Nagle, 172 F.3d 1299 (11th Cir. 1999), a state habeas petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default, or that a fundamental miscarriage of justice will result. Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

The record shows that Petitioner filed a belated direct appeal but then voluntarily dismissed it to pursue a Rule 3.850 motion because Petitioner determined that "no appealable issue existed on the record for direct appeal review" (*id.*, Ex. D; *see also id.* Exs., B, D, E (showing that Petitioner filed a belated appeal which the First DCA permitted him to voluntarily dismiss)). Therefore, the undersigned concludes that Petitioner failed to fairly present his claim of trial court error to the state courts because, as the trial court found, Petitioner did not pursue this claim in a direct appeal.

Additionally, any future attempt by Petitioner to exhaust state remedies would be futile under the state's procedural default doctrine as the state procedural rules do not provide for a second direct appeal, and a second Rule 3.850 motion would be subject to dismissal as a successive motion, pursuant to Florida Rule of Criminal Procedure 3.850(f). Therefore, Petitioner's claim of trial court error is procedurally defaulted for federal habeas purposes. Petitioner does not allege cause for his failure to present his federal claim in the state courts, or that he will suffer prejudice as a result of this court's failure to review the claim. Furthermore, he has failed to show that he is entitled to

review under the "fundamental miscarriage of justice" exception to the procedural bar.  Thus, he is not entitled to federal review of this claim.

      B.      <u>Ground Two: Petitioner's Substantive Constitutional Rights Were Violated When the Court Failed to Inform Petitioner of the Elements of the Crime for Which He Plead No Contest to</u> (Doc. 1 at 9).

      Petitioner argues that when accepting his plea the trial court should have informed him of the nature of the charges against him (*id.*).  Specifically, Petitioner alleges that if the trial court had explained the elements of aggravated battery to him, he would have realized that the facts did not support this charge, and as a result, he would have rejected the plea offer and insisted on proceeding to trial (*id.*).  Petitioner concedes that this claim was not raised in any of the state court proceedings but argues that it meets the "plain error" standard and can be raised for the first time at any stage of the proceedings (*id.*).  Respondent agrees that this claim was never raised in the lower court and accordingly was not properly exhausted (Doc. 5 at 5).  Although Respondent addressed the merits of Petitioner's claim, Respondent did not expressly waive failure to exhaust as a ground for denying relief (*see id.* at 5, 11–13).  *Cf.* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement").

      As discussed *supra*, to fully exhaust, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  <u>O'Sullivan</u>, 526 U.S. at 845 (citing 28 U.S.C. § 2254(c)).  Florida law requires either an appeal of each issue, or where a motion for post-conviction relief is appropriate, the filing of such a motion and an appeal therefrom.  <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5th Cir. 1979).  Failure to exhaust is proper grounds for dismissal of a federal habeas petition.  <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1, 10, 112 S. Ct. 1715, 1720, 118 L. Ed. 2d 318 (1992).

      In the instant case, "Petitioner concedes that this issue was not raised in the state court" (Doc. 1 at 9).  Any future attempt by Petitioner to exhaust state remedies would be futile under the state's procedural default doctrine as the state procedural rules do not provide for a second direct appeal, and a second Rule 3.850 motion would be subject to dismissal as a successive motion, pursuant to

Florida Rule of Criminal Procedure 3.850(f).  Therefore, the claim is procedurally defaulted for federal habeas purposes.  Petitioner does not allege cause for his failure to present his federal claim in the state courts, or that he will suffer prejudice as a result of this court's failure to review the claim.  Furthermore, he has failed to show that he is entitled to review under the "fundamental miscarriage of justice" exception to the procedural bar.  Therefore, he is not entitled to federal review of his claim.

Accordingly, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 4<u>th</u> day of April 2007.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**